**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Browne v. Artex Oil Co.,* **Slip Opinion No. 2019-Ohio-4809.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4809

BROWNE ET AL., APPELLANTS, *v.* ARTEX OIL COMPANY ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Browne v. Artex Oil Co.,* Slip Opinion No. 2019-Ohio-4809.]

*The limitations period set forth in R.C. 2305.04 applies to a claim for declaratory judgment that an oil and gas lease has terminated by its terms and by operation of law due to lack of production.*

(No. 2018-0942—Submitted June 11, 2019—Decided November 26, 2019.)

APPEAL from the Court of Appeals for Guernsey County, No. 17 CA 20, 2018-Ohio-3746.

_____

**FRENCH, J.**

{¶ 1} In this appeal, we consider which statute of limitations applies to a claim for declaratory judgment that an oil and gas lease has terminated by its terms and by operation of law due to lack of production. We hold that the applicable statute is R.C. 2305.04, which states that an action to recover title to or possession of real property shall be brought within 21 years after the cause of action accrues.

**Facts and procedural background**

{¶ 2} Appellants, Barry L. Browne and Rosa R. Browne, own approximately 86 acres of land, along with the oil and gas interests underlying the property, in Guernsey County, Ohio. An oil and gas lease executed in 1975 by one of the Brownes' predecessors in interest and recorded in January 1976 burdens the property. The lease "grant[ed], demise[d], lease[d] and let" the identified real property to the lessee for the purpose of mining and operating for oil and gas for a one-year primary term and a secondary term for as "long thereafter as oil and gas, or either of them, is produced by lessee from said land." One well was drilled on the property.

{¶ 3} Appellees, Artex Oil Company, Artex Energy Group, L.L.C., Arloma Corporation, and James Huck, L.L.C., acquired interests in the lease through various assignments, cross-assignments, and stipulations of interest. Artex Oil Company has operated the well since 1999. Its records state that from December 1999 through September 2014, the well produced 1,771.49 barrels of oil, which generated gross revenue of more than $100,000. Artex Oil Company presented evidence in 2016 that since the Brownes obtained ownership of the mineral interests in 2012, it had paid royalties to the Brownes in 2013, 2014, and 2015.

{¶ 4} In December 2014, two years after obtaining ownership of the mineral estate, the Brownes filed this action against appellees for quiet title, declaratory judgment, conversion, and unjust enrichment, all based on their contention that the lease had terminated by its terms due to lack of production. The complaint alleged that the well did not produce any oil or gas from its inception until 1999 and that the well had been inoperative for a sufficient time to terminate the lease. The Brownes based their allegation of pre-1999 lack of production on reports from the Ohio Department of Natural Resources that allegedly showed no reported production from the well through 1999. The Brownes requested that the court quiet

the title to their property, declare the lease null and void, and award damages for appellees' conversion and unjust enrichment.

{¶ 5} In their answer, appellees asserted a statute-of-limitations defense to the Brownes' claims. Appellees also filed a counterclaim for a declaratory judgment that the lease remained valid and in effect because of continuous production of oil since 1977.

{¶ 6} The parties filed cross-motions for summary judgment. Although it initially denied the parties' motions, the trial court, on reconsideration, granted summary judgment for appellees and dismissed the Brownes' claims with prejudice. The trial court acknowledged appellees' evidence of production in paying quantities from the well and held that the Brownes had not presented any evidence to satisfy their burden of proving that the well was no longer profitable. With respect to the Brownes' allegations of lack of production prior to 1999, however, the court held that "there is a 15-year statute of limitation" applicable to the Brownes' claims, so any lack of production prior to 1999 was irrelevant. Based on appellees' evidence of production since 1999, the court held that the lease remained valid and enforceable according to its terms.

{¶ 7} The Brownes appealed the trial court's judgment and, as relevant here, argued that the trial court erred by holding that their claims were subject to a 15-year statute of limitations. They argued that this is a case for recovery of title to or possession of real property and that the correct limitations period is the 21-year period under R.C. 2305.04. The Fifth District rejected that argument and affirmed the trial court's judgment. It held that pursuant to R.C. 2305.041, the Brownes' case is subject to the 15-year statute of limitations for an action upon a written agreement or contract in former R.C. 2305.06, Am.Sub.H.B. No. 152, 145 Ohio Laws, Part II, 3341, 3569 ("H.B. 152").

{¶ 8} This court accepted a discretionary appeal on a single proposition of law. 153 Ohio St.3d 1485, 2018-Ohio-3867, 108 N.E.3d 82. The Brownes ask this

court to hold that an action for a declaratory judgment that an oil and gas lease has terminated by its own terms for lack of production is governed by the 21-year statute of limitations in R.C. 2305.04 and that the limitations period does not begin to run until a justiciable controversy arises.

## Analysis

{¶ 9} This appeal presents a purely legal question—which statute of limitations applies to the Brownes' claim that the lease terminated by its terms and by operation of law. *See Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 34.

*Law of the case does not moot the statute-of-limitations question*

{¶ 10} Before turning to the parties' arguments regarding the appropriate statute of limitations, we first address the dissenting opinion's assertion that that question is moot because its answer will not affect the outcome of this case. The dissent states that the appellate court's rulings regarding the burden of proof and the evidence that may be used to establish production of oil and gas remain the law of the case and foreclose any possibility that the Brownes can survive appellees' motion for summary judgment, even if a 15-year statute of limitations does not bar consideration of pre-1999 lack of production. We disagree.

{¶ 11} The law-of-the-case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). The law-of-the-case doctrine is a rule of practice, not a rule of substantive law, and courts will not apply it to achieve unjust results. *Id.*, citing *Gohman v. St. Bernard*, 111 Ohio St. 726, 730-731, 146 N.E. 291 (1924), *overruled in part on other grounds*, *New York Life Ins. Co. v. Hosbrook*, 130 Ohio St. 101, 196 N.E. 888 (1935), paragraph two of the syllabus.

{¶ 12} As we have stated, the Brownes' complaint alleged that the lease expired due to lack of production of oil and gas from the lease's inception until 1999. The trial court, however, did not address that claim; because it determined that a 15-year statute of limitations applied, the trial court held that any lack of production prior to 1999 was irrelevant.

{¶ 13} Having concluded that lack of production prior to 1999 was irrelevant, the trial court—with respect to both the Brownes' claims and the counterclaim—considered only the evidence of production, or lack thereof, from 1999 onward. With respect to the time period beginning in 1999, the trial court held, on reconsideration, that the Brownes "have not presented any evidence to satisfy their burden" of proving that the wells are no longer profitable. But the trial court's entry of judgment for appellees on their counterclaim depends on its determination that the 15-year statute of limitations rendered pre-1999 lack of production irrelevant. Had the trial court determined that any of the years prior to 1999 remained in play, it would have had to consider whether there was, in fact, consistent production during those years. The trial court did not do that.

{¶ 14} Even accepting as true the dissent's position that the Fifth District's rulings regarding the burden of proof and the evidence that may establish production of oil and gas are the law of the case, nothing in the court of appeals' decision renders our determination of the applicable statute of limitations advisory.

{¶ 15} The court of appeals affirmed the trial court's holding that the Brownes had "the burden to prove that the wells are no longer profitable." 2018-Ohio-3746, 116 N.E.3d 687, ¶ 35. The trial court's holding, however, did not address whether the Brownes presented evidence of lack of production prior to 1999, because the court held that any lack of production before 1999 was irrelevant. In reviewing the trial court's holding regarding the burden of proof, the court of appeals applied the accepted standards applicable to summary judgment under Civ.R. 56 and merely concluded that the Brownes bore, but did not meet, the

reciprocal burden of producing evidence to rebut appellees' evidence of "continued production" from the well. *Id.* at ¶ 34. Like the trial court, the court of appeals did not address the Brownes' ability to prove that the well went out of production prior to 1999.

{¶ 16} In response to appellees' motion for summary judgment, the Brownes argued that appellees had not met their initial burden with respect to production prior to 1999. If that were true, then the Brownes were not required to meet a reciprocal burden to avoid summary judgment—even though they would have the burden of proof at trial. *See AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990), paragraph two of the syllabus ("Regardless of who may have the burden of proof at trial, the burden is upon the party moving for summary judgment to establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law").

{¶ 17} Neither the trial court nor the court of appeals analyzed the evidence regarding pre-1999 production or lack of production, as both courts considered that question irrelevant in light of the 15-year statute of limitations. The dissenting opinion erroneously states that the trial court found that the Brownes had "failed to present any evidence that the well on their property ever failed to produce oil or gas in paying quantities." Dissenting opinion at ¶ 63. The trial court found only that the Brownes had failed to satisfy their burden of proving that "the wells are *no longer* profitable." (Emphasis added.) That finding regarding current profitability does not relate to pre-1999 production or lack of production. Thus, the court of appeals' holding regarding the burden of proof, even if the law of the case, does not decide this case if the 15-year limitations period does not bar consideration of pre-1999 production or lack of production, when neither lower court has analyzed the Brownes' claim that the lease expired by its terms for lack of production prior to 1999.

{¶ 18} Although the dissenting opinion conducts a review of the pre-1999 evidence and decides that appellees met their initial burden and that the Brownes failed to meet their reciprocal burden to demonstrate a genuine issue of material fact, the better practice is to allow the trial court to analyze the evidence in the first instance.

*An oil and gas lease creates in the lessee a vested property interest*

{¶ 19} We turn now to the question this court accepted: Which statute of limitations applies? In determining which limitations period applies, we "look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). And in order to determine the nature of this case, we briefly consider our recent precedent regarding the characterization of subsurface minerals and the nature of oil and gas leases in Ohio.

{¶ 20} Ohio, like a majority of states, recognizes that minerals underlying the surface of real property are part of the realty but may be severed from the surface estate for purposes of separate ownership. *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 21-22. Indeed, the Marketable Title Act, as amended in 1973, Am.S.B. No. 267, 135 Ohio Laws, Part I, 942-943, and the Dormant Mineral Act, 1989 Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981, were enacted partly in response to the common-law rule that severed mineral rights were not subject to abandonment or termination for the failure to produce oil or gas. *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 15, 17-19 (lead opinion).

{¶ 21} The owner of a mineral estate, whether or not also the owner of the surface estate, may convey the rights to the subsurface minerals through an oil and gas lease. *Buell* at ¶ 24. The oil and gas lease provides a mechanism by which an

owner of a mineral estate can permit others to explore and exploit the land's mineral resources in exchange for royalties and other consideration. *Id.* at ¶ 17.

{¶ 22} Although oil and gas leases " 'straddle the line between property and contract,' " *id.* at ¶ 41, quoting Keeling & Gillespie, *The First Marketable Product Doctrine: Just What is the "Product"?*, 37 St. Mary's L.J. 1, 6 (2005), Ohio is in line with the general consensus among the states that an oil and gas lease creates a real-property interest, *id.* at ¶ 42-43, 49; *see also* R.C. 5301.09, 2014 Sub.H.B. No. 9 (effective Mar. 23, 2015) (recognizing that oil and gas leases "create an interest in real estate").

{¶ 23} In describing the property interest created by an oil and gas lease, we have acknowledged that the lease affects the possession and custody of both the mineral and surface estates. *Buell* at ¶ 60. During the term of the lease, "the lessor effectively relinquishes his or her ownership interest in the oil and gas underlying the property in favor of the lessee's exclusive right to those resources." *Id.* at ¶ 62. The lessee also enjoys reasonable use of the surface estate to accomplish the purposes of the lease. *Id.* at ¶ 60. Based on the vested nature of the grant, "the oil and gas lease has been construed as transferring to the lessee a fee simple determinable in the mineral estate with a reversionary interest retained by the lessor that can be triggered by events or conditions specified in the lease." *Id.* at ¶ 61, citing *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129-130, 48 N.E. 502 (1897).

{¶ 24} As the lease here exemplifies, the term of an oil and gas lease is typically defined by a habendum clause that sets out a primary fixed term, followed by a secondary term that extends the lessee's rights under the lease on satisfaction of certain described conditions, such as production of oil and gas in paying quantities. *Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 77. If the conditions of the secondary term are not met, the lease terminates by its express terms and by operation of law and the mineral estate revests in the lessor. *Id.* Upon

expiration of the lease, the lessee loses his status as lessee by virtue of the terms of the agreement. *Id.* at ¶ 73.

{¶ 25} Although termination of a lease pursuant to a habendum clause occurs by operation of law, there is no record notice on the chain of title that the mineral rights have reverted to the lessor unless the lessee takes the additional step of recording a formal release. *Id.* at ¶ 75. In the absence of a formal release, a lessor may "need to resort to the courts to obtain complete relief, i.e. cancellation of the lease of record and removal of the cloud from the title." *Rudolph v. Viking Internatl. Resources Co., Inc.*, 2017-Ohio-7369, 84 N.E.3d 1066 (4th Dist.), ¶ 41, citing Summers, *Oil & Gas*, Section 19:1 (3d Ed.2016). That is what the Brownes seek here—a judicial declaration that the lease terminated by its own terms due to lack of production and that the mineral estate reverted to the Brownes or to their predecessors in interest by operation of law.

{¶ 26} The dissenting opinion faults our reliance on *Buell* based on its characterization of the discussion in that case of the property interests implicated by oil and gas leases as dicta. The author of the dissenting opinion took a similar position in *Buell* itself but did not garner any other votes for that position. *See Buell* at ¶ 96 (Kennedy, J., concurring in the answers to the certified questions and concurring in the opinion in part). Here, as in *Buell*, the author contends that this court in *Buell* should have answered the certified question—whether a recorded oil and gas lease affects title to an interest in land and is a "title transaction" for purposes of the Dormant Mineral Act—but should have gone no further. An examination of the nature of oil and gas leases, however, was a necessary predicate to answering the certified question. We stated, "Answering the certified questions requires an interpretation of the term 'title transaction' under the Dormant Mineral Act as well *as a review of the nature of a recorded oil and gas lease under Ohio law*." (Emphasis added.) *Id.* at ¶ 29.

{¶ 27} While we acknowledged in *Buell* that the precise "nature of the instrument" was not "a dispute presented to us for resolution," 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 65, fn. 5, our discussion of the nature of oil and gas leases more generally was necessary to our determination that a recorded oil and gas lease "constitutes a title transaction because it affects title to the surface and mineral owners' interests in land," *id.* at ¶ 66. But even if that discussion was dicta, as the dissent in this case suggests, we may nevertheless rely on it as persuasive authority, *see, e.g., Humphrey's Exr. v. United States*, 295 U.S. 602, 627, 55 S.Ct. 869, 79 L.Ed. 1611 (1935) (dicta "may be followed if sufficiently persuasive," even though it is not controlling); *State ex rel. Baur v. Medina Cty. Bd. of Elections*, 90 Ohio St.3d 165, 168, 736 N.E.2d 1 (2000) (disapproving of a party's reliance on dicta not simply because it was dicta but also because it was not supported by persuasive authority and was contrary to the court's holding in the case in which it appeared). Our analysis in *Buell* is supported by persuasive authority, and this court's discussion of the nature of oil and gas leases under Ohio law flows from long-standing precedent of this court, including particularly *Harris*, 57 Ohio St. 118, 48 N.E. 502. Reliance on *Buell* is warranted.

{¶ 28} Bearing in mind the nature of oil and gas leases as set out in *Buell* and *Harris*, we now consider which statute of limitations applies to the Brownes' claims.

*The Brownes' claims are not exempt from application*
*of a statute of limitations*

{¶ 29} Contrary to their own proposition of law, which states that the 21-year statute of limitations in R.C. 2305.04 applies to their claims, the Brownes alternatively argue in their merit brief that *no* statute of limitations should apply to their claims.

{¶ 30} The Fourth and Seventh District Courts of Appeals have rejected the argument that a claim to declare that an oil and gas lease terminated by its own

terms is not subject to any statute of limitations. *See Rudolph*, 2017-Ohio-7369, 84 N.E.3d 1066, at ¶ 53 (4th Dist.) (any suggestion that "there is no statute of limitation on actions to declare a lease has terminated by its own terms is incorrect"); *Potts v. Unglaciated Industries, Inc.*, 2016-Ohio-8559, 77 N.E.3d 415, ¶ 101 (7th Dist.) ("The fact an act or omission is alleged to have occurred, which would cause a lease to expire automatically and by operation of law, does not eliminate the application of a specific statute of limitations"). We agree with those courts and reject the Brownes' alternative argument.

{¶ 31} An action for a declaratory judgment is a civil action. *Renee v. Sanders*, 160 Ohio St. 279, 116 N.E.2d 420 (1953), paragraph one of the syllabus. "[U]nless a different limitation is prescribed by a statute, a civil action may be commenced only within the period prescribed in sections 2305.04 to 2305.22 of the Revised Code." R.C. 2305.03(A). R.C. 2305.04 through 2305.131 set out statutes of limitations that apply to specific types of claims. R.C. 2305.14 creates a catchall limitations period of ten years for those causes of action that do not fall within any of the types of claims specified in the other statutes. Through R.C. 2305.03(A) and the catchall limitations period in R.C. 2305.14, the General Assembly has instructed that any civil action is subject to a statute of limitations.

{¶ 32} Statutes of limitations serve several important purposes. They ensure fairness to the defendant; encourage prompt prosecution of causes of action; suppress stale and fraudulent claims; and avoid inconveniences caused by delay, including the difficulties of proof in older cases. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 10. Difficulty of proof in older cases is an especially apt consideration in the context of oil and gas leases, which can continue, upon production of oil and gas, for many decades. For example, *Potts*, 2016-Ohio-8559, 77 N.E.3d 415, involved an oil and gas lease executed and recorded in 1896 and a claim to quiet title filed 117 years later, in 2013. The Seventh District rejected the arguments that no statute of limitations

applied and that the defendant-lessee was required to prove production for the entire 112-year secondary term of the lease. *Id.* at ¶ 113-115. The court stated, "The entire purpose behind a statute of limitations is to eliminate the burden a stale claim puts upon a party and to recognize evidence is unlikely to exist on events occurring in the distant past." *Id.* at ¶ 112.

{¶ 33} Because the General Assembly has instructed that civil actions are subject to a statute of limitations and because application of a statute of limitations to claims arising out of the alleged termination of an oil and gas lease is consistent with the purposes of statutes of limitations in general, we reject the Brownes' argument that their claims are exempt from application of any statute of limitations.

*R.C. 2305.041 does not apply to the Brownes' claims*

{¶ 34} In its determination of the appropriate limitations period, the Fifth District looked to R.C. 2305.041, which states:

> With respect to a lease or license by which a right is granted to operate or to sink or drill wells on land in this state for natural gas or petroleum and that is recorded in accordance with section 5301.09 of the Revised Code, *an action alleging breach of any express or implied provision of the lease or license concerning the calculation or payment of royalties* shall be brought within the time period [for commencement of an action for breach of a contract of sale] that is specified in section 1302.98 of the Revised Code. *An action alleging a breach with respect to any other issue that the lease or license involves* shall be brought within the time period [for commencement of an action upon a written contract] specified in section 2305.06 of the Revised Code.

12

(Emphasis added.) The court of appeals applied R.C. 2305.041 and stated, "[b]ecause this case involves an issue other than the calculation or payment of royalties," the 15-year limitations period in former R.C. 2305.06[1] applies to the Brownes' claims. 2018-Ohio-3746, 116 N.E.3d 687, at ¶ 24-25.

{¶ 35} R.C. 2305.041 establishes limitations periods for two types of claims involving oil and gas leases: (1) actions alleging breach of an express or implied lease provision concerning the calculation or payment of royalties and (2) actions alleging a breach with respect to any other issue involving the lease. Both types of actions involve allegations of a breach. And as oil and gas leases are contracts, *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, ¶ 9, both types of actions governed by R.C. 2305.041 involve breaches of contract. A "breach of contract" occurs upon a "[v]iolation of a contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance." *Black's Law Dictionary* 232 (11th Ed.2019).

{¶ 36} The Brownes' complaint states that appellees and/or their predecessors in interest "breached the express provision of the Lease requiring" the production of oil or gas "to continue the existence of the Lease." But despite the Brownes' use of the word "breach," the lease did not impose a contractual obligation upon the lessee to produce oil or gas. Nor did it afford the lessor a contractual remedy for a lessee's failure to do so. It instead merely provided for termination of the lease if after the expiration of the lease's primary term oil or gas was not produced from the leased premises. The Brownes do not seek damages for breach of contract; they seek a declaration that the lease terminated by its terms due

---

1. In 2012, the General Assembly shortened the limitations period in R.C. 2305.06 for commencement of "an action upon a specialty or an agreement, contract, or promise in writing" to eight years, 2012 Sub.S.B. No. 224, but appellees agree that, if applicable at all, the former version of R.C. 2305.06, H.B. 152 at 3569, with its 15-year limitations period, would apply here.

to lack of production, an order quieting title to their property, and damages for conversion and unjust enrichment.

{¶ 37} Courts in other states have refused to recognize or impose any obligation on a lessee to maintain a lease under the terms of a habendum clause. *See Miami Oil Producers, Inc. v. Larson*, 203 Mont. 225, 232, 661 P.2d 1260 (1983) (lease provided that it would terminate if drilling or reworking operations did not resume within 90 days after cessation of production following the primary term; lessee was not obligated to extend the lease by resumption of operations); *Lynch v. S. Coast Drilling Co., Inc.*, 442 S.W.2d 804, 807 (Tex.Civ.App.1969) (limitation that extended the lease only as long as oil and gas were produced "impose[d] no obligation on lessees to perform any duty"); *San Mateo Community College Dist. v. Half Moon Bay Ltd. Partnership*, 65 Cal.App.4th 401, 410, 76 Cal.Rptr.2d 287 (1998) (termination of lease for failure to continue producing in paying quantities "d[id] not constitute a forfeiture for breach of a lease covenant").

{¶ 38} The crux of the Brownes' claims is that the lessees' alleged failure to produce oil or gas from the well resulted in the lease's termination pursuant to the habendum clause. As we held in *Buell*, an oil and gas lease terminates by its express terms and by operation of law and the mineral estate revests in the lessor if the conditions of the secondary term are not met. 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 77. Termination of a lease pursuant to its habendum clause is not the result of a breach of the lease when nothing in the lease obligates the lessee to maintain the lease into the secondary term or for any period of time once the secondary term commences. Because the Brownes' claims do not arise out of a breach of the lease, R.C. 2305.041 does not apply.

*R.C. 2305.04's statute of limitations for claims to recover title to or possession of real property, and not R.C. 2305.06's statute of limitations for claims upon a written agreement, applies*

{¶ 39} Appellees argue that the Brownes' claims, even if they do not fall within the scope of R.C. 2305.041, are governed by the 15-year limitations period in former R.C. 2305.06, H.B. 152 at 3569, which applies to any "action upon a specialty or an agreement, contract, or promise in writing" and is not limited to actions alleging a breach. The Brownes, on the other hand, argue that the automatic termination of an oil and gas lease by its terms, due to cessation of production, implicates only property interests and does not present a contractual dispute. They argue that if any statute of limitations applies, it is the 21-year statute of limitations in R.C. 2305.04 for "[a]n action to recover the title to or possession of real property."

{¶ 40} Consistent with the Brownes' argument, the Fourth District Court of Appeals has held that a claim for a declaratory judgment that an oil and gas lease terminated by its own terms is not a contract claim but an action to quiet title. *Rudolph*, 2017-Ohio-7369, 84 N.E.3d 1066, at ¶ 3, 44-45. In *Rudolph*, the subject well did not produce for four years, from 1998 through 2001, and the court of appeals held that the lease expired by its own terms in December 1999, after two years of nonproduction. *Id.* at ¶ 39. To determine the appropriate statute of limitations for Rudolph's declaratory-judgment claim, the court looked to the underlying nature or subject matter of the claim. It stated that a lessee's failure to maintain a lease by production in paying quantities does not necessarily give rise to a cause of action for breach of the lease. *Id.* at ¶ 43. The court explained that if, for example, production had ceased because the lessee had made a good-faith determination that it was not economically reasonable to commercially operate the well or because the well had become depleted, then there was no breach. *Id.* Based in part on this court's discussion in *Buell* of the nature of oil and gas leases and the

property interests they create, the Fourth District held that Rudolph's declaratory-judgment claim was not an action on contract but was more akin to a quiet-title action, and the court applied the 21-year statute of limitations for recovery of real property under R.C. 2305.04. *Rudolph* at ¶ 44-46. *See also Cox v. Kimble*, 5th Dist. Guernsey No. 13 CA 32, 2015-Ohio-2470, ¶ 57-66 (suggesting, without expressly holding, that an action for a declaratory judgment that an oil and gas lease expired by its terms is subject to the 21-year statute of limitations in R.C. 2305.04).

{¶ 41} We agree with the Fourth District's holding in *Rudolph* that an action to recognize the reversion of mineral interests following the alleged termination of an oil and gas lease pursuant to its express terms is not an action upon a written contract; it is more akin to a quiet-title action.

{¶ 42} The court of appeals here erroneously held that the nature or subject matter of the Brownes' claims was "a dispute over the written terms of the lease agreement." 2018-Ohio-3746, 116 N.E.3d 687, at ¶ 22. As we stated previously, the lease did not impose a contractual obligation upon the lessee to produce oil or gas. And the parties do not dispute either the terms of the lease or the meaning of those terms; they dispute only whether there was a period of nonproduction that terminated the lease by operation of law. Like the plaintiff in *Rudolph*, the Brownes seek recognition of their reversionary interest in the minerals, which themselves constitute part of the realty. We therefore hold that the Brownes' claims are governed by the 21-year statute of limitations in R.C. 2305.04.

*We do not decide when the Brownes' claims accrued*

{¶ 43} Beyond correctly stating that R.C. 2305.04 is the applicable statute of limitations, the Brownes' proposition of law states that the limitations period does not begin to run until a justiciable controversy arises. R.C. 2305.04 states that the time for bringing an action is measured from when the cause of action accrued.

{¶ 44} Justiciability is a threshold requirement for a declaratory judgment. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 10. "[I]n

order for a justiciable question to exist, ' "[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events * * * and the threat to his position must be actual and genuine and not merely possible or remote." ' " *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9, quoting *League for Preservation of Civ. Rights v. Cincinnati*, 64 Ohio App. 195, 197, 28 N.E.2d 660 (1st Dist.1940), quoting Borchard, *Declaratory Judgments*, 40 (1934).

{¶ 45} To the extent the Brownes assert the legal principle that a declaratory-judgment claim accrues only when there is a justiciable controversy that can be addressed through declaratory judgment, we agree. But the Brownes further ask this court to determine when their claims accrued and when the statute of limitations began to run. They maintain that a justiciable controversy arose—and that their cause of action accrued—only when they realized that there was a dispute over the lease's continued validity. And they argue that lessees' resumption of production following the alleged termination did not give rise to a justiciable controversy. But the Brownes did not raise that issue in the court of appeals, and neither the trial court nor the court of appeals considered or determined when the Brownes' cause of action to recover title to real property accrued, so as to begin the limitations period. We therefore decline to address that question for the first time on appeal. *See Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 ("an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts").

### Conclusion

{¶ 46} We hold that the 21-year limitations period in R.C. 2305.04 applies to a claim for a declaratory judgment that an oil and gas lease has expired by its own terms for lack of production. In light of the applicable statute of limitations, and contrary to the trial court's statement, evidence of lack of production prior to 1999 is not irrelevant. We therefore reverse the Fifth District's judgment and

remand this matter to the trial court to evaluate the parties' claims in light of the correct statute of limitations.

Judgment reversed<br>and cause remanded.

O'CONNOR, C.J., and FISCHER and DEWINE, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by STEWART, J.

DONNELLY, J., dissents and would dismiss the appeal as improvidently accepted.

_____

**KENNEDY, J., dissenting.**

{¶ 47} By accepting only the proposition of law related to the statute of limitations, this court rendered the appellants' appeal moot. As I explain below, regardless of this court's ruling on the statute-of-limitations issue, the ultimate judgment will be the same—summary judgment in favor of the oil companies (because under the law-of-the-case doctrine, the court of appeals' rulings on the issues that were not accepted for review by this court will remain in place on remand). Accordingly, I would dismiss this appeal as moot.

{¶ 48} I disagree with the majority's analysis for three reasons. First, deciding today which statute of limitations applies to an action seeking a declaration that an oil and gas lease has expired cannot affect the outcome of this case; regardless of the statute of limitations applied, the appellants, Barry L. and Rosa R. Browne, have not produced sufficient evidence to show that there is a genuine question whether the well on their property ever went out of production, which would have caused the lease to expire by operation of law. Second, in holding that the 21-year statute of limitations for actions to recover title to real property applies to litigation seeking to quiet title after an oil and gas lease has expired, the majority amplifies dicta in *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, misconstruing Ohio law and

18

improperly classifying the property interest created by an oil and gas lease. Third, in determining that a statute of limitations applies in a quiet-title action brought to declare that a lease expired under its terms, the majority muddles the law of oil and gas by requiring judicial action to terminate a lease when it is well established in our caselaw that when a lease expires, it terminates automatically and by operation of law; a lawsuit is not needed for the landowner to regain his or her property rights to oil and gas.

{¶ 49} For these reasons, I dissent.

**Facts and Procedural History**

{¶ 50} The Brownes own land in Guernsey County encumbered by an oil and gas lease that was signed by one of their predecessors-in-interest and recorded in 1976. The lease provided for a one-year primary term and a secondary term for as "long thereafter as oil and gas, or either of them, is produced by lessee from said land." One well has been drilled on the property.

{¶ 51} In 2014, the Brownes sued appellees, Artex Oil Company, Artex Energy Group, L.L.C., Arloma Corporation, and James Huck, L.L.C. (collectively, "Artex"), seeking to quiet title to the oil and gas rights and requesting a declaratory judgment that the lease is no longer in effect as well as damages for conversion of oil and gas and a remedy for unjust enrichment. Specifically, they alleged that the lease had expired due to the lack of production of oil or gas from the lease's inception until at least 1999. Artex counterclaimed, alleging that there had been continuous production of oil since 1977 and seeking a declaratory judgment that the lease remained in effect.

{¶ 52} Artex moved for summary judgment, arguing that the Brownes bore the burden to prove that the well had gone out of production and that their reliance on a lack of affirmative evidence—in the form of production reports and receipts— that the well had produced oil and gas did not satisfy their burden. Artex pointed to evidence from James Vernon Patterson, a prior owner of the property, who

averred that the well had remained in continuous production from its completion until he sold the property in 2000. Artex also presented the affidavits of two of its former well pumpers, stating that the well had remained in production since 1999. These men explained that oil was produced and stored in tanks until sufficient quantities accumulated for sale and the weather permitted the necessary access to the tanks. According to Artex, although oil sales took place only when sufficient oil had accumulated in the storage tank, production occurred throughout the life of the well.

{¶ 53} In response, the Brownes maintained that it was Artex that bore the burden to prove that the lease remained in effect by producing evidence showing that the well had produced oil or gas continuously since it was built. The Brownes relied on evidence that Artex's predecessors-in-interest had failed to report any production from the well to the Ohio Department of Natural Resources ("ODNR") until 1999 and that Artex itself reported no production for the years 2002, 2005, and 2008. The Brownes also asserted that the only receipts Artex had produced showing that oil from the well had been collected and sold were six run tickets, and those run tickets show the sale of oil only from 2009 through 2013. Lastly, they pointed to a graph, created by Artex's predecessor-in-interest and provided in discovery, showing actual production only during the first four years of the well's existence; the Brownes noted that "[a]lthough the graph is dated through 1996, there is no indication of production after 1980."

{¶ 54} After initially denying Artex's motion for summary judgment, the trial court reconsidered, entered summary judgment for Artex, and dismissed the Brownes' claims. Although the trial court stated that the Brownes bore "the burden to prove that the well[ is] no longer profitable," it is manifest that the focus of the case remained on whether the well on the Brownes' property had ever gone out of production. The trial court found they had "not presented any evidence to satisfy their burden" while Artex had "presented significant evidence that the well has been

producing in paying quantities." It determined that "the absence of an ODNR report does not mean that a well did not produce," and it explained that Artex's "production records and affidavits can be used to show that the Well has been producing." Lastly, the court held that a 15-year statute of limitations applied to the Brownes' claims, and it indicated that "any lack of production prior to 1999 would be irrelevant."

{¶ 55} The Fifth District Court of Appeals affirmed the summary judgment in favor of Artex, holding that pursuant to R.C. 2305.041, the 15-year statute of limitations for an action upon a written contract set forth in former R.C. 2305.06, Am.Sub.H.B. No. 152, 145 Ohio Laws, Part II, 3341, 3569, applied to the Brownes' attempts to terminate the lease for nonproduction, that the Brownes bore the burden of proving that the lease had terminated for nonproduction, and that Artex could present production records and affidavits (rather than run tickets or receipts for the "legal tender of oil") to prove continued production. 2018-Ohio-3746, 116 N.E.3d 687, ¶ 25, 35, 38, 41. It also explained that the trial court had not erroneously focused on profitability rather than production; the court of appeals pointed out that the trial court made several findings regarding production, and therefore, the court of appeals concluded, "the trial court did not determine [that the Brownes'] issue was one of profitability as opposed to production." *Id*. at ¶ 44-47.

**The Majority Opinion Is Advisory**

{¶ 56} This court accepted the Brownes' first proposition of law for review: "In an action to declare that an oil and gas lease has terminated under its own terms for lack of production in paying quantities, the applicable statute of limitations is 21 years, per Ohio Revised Code § 2305.04, and does not begin to run until a 'justiciable controversy' arises." *See* 153 Ohio St.3d 1485, 2018-Ohio-3867, 108 N.E.3d 82.

{¶ 57} However, in accepting the Brownes' appeal on only one of the propositions of law they raised, this court declined review over four other

propositions that addressed dispositive rulings of the court of appeals. Proposition of law No. 2 stated, "A cessation of commercial production of oil or gas, generally for two years or more, will cause an oil and gas lease to automatically terminate under the terms of its habendum clause." Proposition of law No. 3 contended, "In order to perpetuate an oil and gas lease under its habendum clause, there must exist objective and verifiable evidence of the commercial sale of oil or gas." Proposition of law No. 4 maintained, "Evidence of production, i.e., the mere withdrawal of oil or gas from a well bore, is not the equivalent to evidence of 'production in paying quantities' necessary to perpetuate an oil and gas lease under its habendum clause." And proposition of law No. 5 urged, "In an action to declare that an oil and gas lease has expired under its own terms for lack of production in paying quantities, the burden of proof is on the lessee."

{¶ 58} Because a majority of this court chose not to consider these propositions of law challenging the appellate court's rulings regarding the burden of proof and the evidence that may be used to establish the production of oil and gas, these rulings will remain the law of the case on remand. As we explained in *Giancola v. Azem*, "a trial court is without authority to extend or vary the mandate issued by a superior court, * * * and 'where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law.' " 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 16, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). Although we generally view the law-of-the-case doctrine as a rule of practice, the mandate rule is substantive; "the Ohio Constitution 'does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals,' " *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633, ¶ 32, quoting *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32, 391 N.E.2d 343 (1979).

{¶ 59} This means that on remand, the trial court is required to leave the burden of production and persuasion on the Brownes, and it is obliged to enter judgment against them if they are not able to prove a negative—that is, if they are unable to provide sufficient evidence to show that there is a genuine question whether the lease expired because the well on their property did not produce oil or gas for a sufficient period of time. And because the majority determines only that the trial court erred in failing to consider evidence of lack of production prior to 1999, any claim that the well went out of production at any time after that time is beyond the scope of the trial court's review.

{¶ 60} The Brownes' theory of recovery was premised on their assertion that there was no evidence that the well had remained in continuous production, and their claim that the lease had expired hinged on Artex's bearing the burden of proving the continued production of oil or gas since the completion of the well. The allocation of the burden of proof therefore decides this case. And because it is the law of the case that the Brownes bear the burden of proof, they cannot succeed in this litigation regardless of the majority's determination that the 21-year statute of limitations for actions to recover title to real property applies to their declaratory-judgment action. Because a summary judgment in favor of Artex is inescapable on remand, determining what statute of limitations controls does not affect the outcome of this case.

{¶ 61} But even if this appeal were not moot, there would still be no need to decide the statute-of-limitations issue. This case comes to the court on appeal from a summary judgment in favor of Artex. Our review is therefore de novo, and we must "consider the evidence as if for the first time." *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. For this reason, we must conduct our own examination of the record, *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (1992), independently and without deference to the lower court's determination, *Johnson v. Am. Italian Golf Assn. of Columbus*, 2018-

Ohio-2100, 113 N.E.3d 1144, ¶ 13 (10th Dist.)*; see also Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24 (in reviewing summary-judgment rulings, "we apply the same standard as the trial court and court of appeals"). Further, an appellate court reviews the inferior court's judgment, not its reasoning, and "[w]e have 'consistently held that a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof," *Salloum v. Falkowski*, 151 Ohio St.3d 531, 2017-Ohio-8722, 90 N.E.3d 918, ¶ 12, quoting *Joyce v. Gen. Motors Corp.,* 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990).

{¶ 62} The trial and appellate courts correctly ruled that the Brownes' claim cannot survive Artex's motion for summary judgment. Artex not only argued that the Brownes lack any evidence to meet their burden to demonstrate that the well ever went out of production, but also it presented the affidavit of the Brownes' predecessor-in-interest, who averred based on personal knowledge that oil and gas had been produced from the well "on a continuing basis" from the time the well was completed until the time that he sold the property in 2000. He also stated that the gas that was produced was not sold but had been used by the landowner. Artex therefore met its initial burden in moving for summary judgment to demonstrate that there is no genuine issue of material fact and that the Brownes cannot prove that the well on their property went out of production prior to 1999. *See Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997) (explaining that the party moving for summary judgment bears the initial burden to inform the court of the basis for the motion and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims).

{¶ 63} The burden of going forward with evidence therefore shifted to the Brownes, who needed to present sufficient evidence to establish that there was a genuine issue of fact remaining for trial regarding whether the well in fact had gone

out of production. Civ.R. 56(E); *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 34. However, the Brownes failed to meet this burden. As they admitted in their response to Artex's motion for summary judgment, "[t]he only evidence that has been offered thus far is the absence of reporting during the statutory reporting period that started in 1984 through 1999." However, the failure to file production reports does not prove that a well was not producing oil or gas. *Potts v. Unglaciated Industries, Inc.*, 2016-Ohio-8559, 77 N.E.3d 415, ¶ 75 (7th Dist.); *see also Holland v. Gas Ents. Co.*, 4th Dist. Washington No. 15CA42, 2016-Ohio-4792, ¶ 28 (noting the difference between failing to file a production report and reporting no production). The well summary on which the Brownes rely simply indicates that no production reports were submitted to ODNR; it does not show that the well owner ever reported no production (or zero barrels) of oil from the well. Therefore, the Brownes have simply failed to present any evidence that the well on their property ever failed to produce oil or gas in paying quantities. And because the Brownes' evidence is insufficient to create a genuine issue of material fact, summary judgment in favor of Artex was appropriate. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 14.

{¶ 64} For all of these reasons, deciding what statute of limitations, if any, applies to the Brownes' action is unnecessary and contravenes "our long-standing practice disfavor[ing] issuing advisory opinions," *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, ¶ 31, as well as "the 'cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more,'" *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Administration*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment).

**The Majority Opinion Relies on Dicta**

{¶ 65} In determining that R.C. 2305.04, the statute of limitations for actions to recover title to real property, applies, the majority relies on *Chesapeake Exploration, L.L.C. v. Buell* for the statement that oil and gas "may be severed from the surface estate for purposes of separate ownership." Majority opinion at ¶ 20, citing *Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 21-22. It quotes *Buell* as suggesting that " 'the oil and gas lease has been construed as transferring to the lessee a fee simple determinable in the mineral estate with a reversionary interest retained by the lessor that can be triggered by events or conditions specified in the lease.' " Majority opinion at ¶ 23, quoting *Buell* at ¶ 61. The majority then reasons:

> [A]n action to recognize the reversion of mineral interests following the alleged termination of an oil and gas lease pursuant to its express terms is not an action upon a written contract; it is more akin to a quiet-title action.
>
> * * * We therefore hold that the Brownes' claims are governed by the 21-year statute of limitations in R.C. 2305.04.

*Id.* at ¶ 41-42.

{¶ 66} The statements from *Buell*, however, are dicta. As the North American Coal Royalty Company and the Ohio Oil and Gas Association argued in that case, it was "not necessary to address whether an oil and gas lease creates a particular property interest," and as I noted in my opinion concurring in part, the majority's addressing that issue without briefing and on the record available in that case "could have unintended negative consequences in the oil and gas industry," *Buell* at ¶ 96 (Kennedy, J., concurring in the answers to the certified questions and concurring in the opinion in part).

**{¶ 67}** The first question in *Buell* was whether a recorded oil and gas lease was a "title transaction," i.e., whether a recorded oil and gas lease affects title to an interest in land, for purposes of the Ohio Dormant Mineral Act. *Id*. at ¶ 14, 29-32. *Buell* correctly answered that question in the affirmative. We had already recognized that "an oil lease is an encumbrance," *Karas v. Brogan*, 55 Ohio St.2d 128, 129, 378 N.E.2d 470 (1978), and a recorded lease puts a cloud on record title—a title search would reveal the possibility that the lessee may claim rights under the recorded lease encumbering the property. The second question before the court in *Buell* was whether mineral rights that had been reserved in a deed were saved from being deemed abandoned under the Dormant Mineral Act by the unrecorded expiration of a recorded lease of those rights to a third party. *Buell* at ¶ 68. The simple answer was no, because the unrecorded expiration of a lease does not affect record title—the expiration of the lease happened automatically by operation of law and outside the chain of recorded title. *Id*. at ¶ 75.

**{¶ 68}** It was therefore unnecessary for this court in *Buell* to go further and decide the exact nature of the property interest, if any, that is transferred by an oil and gas lease, and the majority opinion in *Buell* acknowledged as much. It noted that the nature of the instrument was not a dispute presented to the court for resolution, *id*. at ¶ 65, fn. 5, but it assumed that the instrument was an oil and gas lease, *id*., notwithstanding its recognition that the rights of the parties to an oil and gas lease depend on the terms of the lease itself, *id*. at ¶ 48, 53. And then the court admitted that the result would be the same even if the lease transferred "something less than a determinable fee." *Id*. at ¶ 65.

**{¶ 69}** The court's statements in *Buell* that an oil and gas lease severs the mineral estate from the surface estate and creates a fee-simple-determinable interest in land were unnecessary and therefore are obiter dicta, which has "no precedential force" in a later case, *State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, ¶ 24, superseded by statute on other grounds, as stated

in *State ex rel. Cincinnati Enquirer v. Cincinnati*, __ Ohio St.3d __, 2019-Ohio-3876, __ N.E.3d __, ¶ 12; *see also Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 284, 638 N.E.2d 991 (1994) (explaining that dicta in a prior case had no binding effect on this court's decision in a later case).

{¶ 70} As Chief Justice Marshall wrote almost 200 years ago in *Cohens v. Virginia*: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." 19 U.S. 264, 399, 5 L.Ed. 257 (1821). This is so because " '[t]he problem with dicta, and a good reason that it should not have the force of precedent for later cases, is that when a holding is unnecessary to the outcome of a case, it may be made with less care and thoroughness than if it were crucial to the outcome.' " *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 89 (O'Donnell, J., concurring in part and dissenting in part), quoting *Bauer v. Garden City*, 163 Mich.App. 562, 571, 414 N.W.2d 891 (1987). Today's decision affords dicta precedential value and ignores the wisdom of these fundamental tenets.

**The Dicta in *Buell* Is Erroneous**

{¶ 71} The court in *Buell* acknowledged that there is a split of authority on the nature of the right conveyed by an oil and gas lease. *Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 42. Some states, Texas, Pennsylvania, Mississippi, New Mexico, North Dakota, and Alabama, follow the ownership-in-place theory. 1 Brown, *The Law of Oil and Gas Leases*, Section 3.02(1) (2d Ed.2019). The ownership-in-place theory applies the common-law rule applicable to solid minerals such as coal and recognizes that an oil and gas lease conveys an interest in land based on the premise that oil and gas are subject to ownership, severance, and sale while still embedded in the ground. *Id*. That is, the lease

conveys the oil and gas itself while still in the ground, creating a determinable fee. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex.1982).

{¶ 72} Other states—including Oklahoma, Kansas, Indiana, New York, Illinois, Arkansas, Kentucky, Montana, Wyoming, Tennessee, Washington, West Virginia, and California—follow the incorporeal-hereditament theory, which is premised on the idea that oil and gas can move across property lines and therefore cannot be owned by the lessee until produced from the ground. 1 Brown, Section 3.02(2) and fn. 26. As the Supreme Court of Oklahoma has explained, an oil and gas lease "does not vest in [the lessee] the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth—an incorporeal hereditament." *Kolachny v. Galbreath*, 1910 OK 229, 26 Okla. 772, 110 P. 902, 906. An incorporeal hereditament is an intangible right in land such as an easement. *Black's Law Dictionary* 842 (10th Ed.2014).

{¶ 73} In *Buell*, the majority viewed the 1897 decision in *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 48 N.E. 502 (1897), as adopting the ownership-in-place theory of oil and gas law, so that an oil and gas lease creates a fee-simple-determinable interest in the lessee. *Buell* at ¶ 42-44, 61. The problem with that analysis, however, is that our precedent has long adopted the view that oil and gas in place remains the property of the landowner and becomes the property of the well owner only when it is produced. For example, in *Harris*, the court explained that oil and gas had *remained* the property of the landowner after the expiration of the lease. *Id.* at 128. Chief Justice Burket, who authored *Harris*, also wrote *Kelly v. Ohio Oil Co.*, which held that "[p]etroleum oil is a mineral, and while it is in the earth it forms a part of the realty, and when it reaches a well, and is produced on the surface, it becomes personal property, and belongs to the owner of the well." 57 Ohio St. 317, 49 N.E. 399 (1897), paragraph one of the syllabus. Therefore, oil

and gas subject to an oil and gas lease remains the property of the lessor until it is produced. *Nonamaker v. Amos*, 73 Ohio St. 163, 170-171, 76 N.E. 949 (1905).

{¶ 74} *Buell* correctly cited *Kelly* and *Nonamaker* as holding that oil and gas are part of the realty, *Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 21, but omitted the second half of the holding in those cases, which is that oil and gas is not owned by the owner of the well until it is extracted from the ground. *Buell* then tried to distinguish our decision in *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, 113 N.E.2d 865 (1953), by focusing on the difference between the instruments at issue in those cases—according to *Buell*, *Harris* involved a lease, while *Back* concerned a license. *Buell* at ¶ 44-47.

{¶ 75} At issue in *Back* was whether filing an instrument conveying oil and gas rights with the records of leases instead of filing it with the records of deeds of conveyances gave a subsequent purchaser of the property affected by the instrument constructive notice of the conveyance of the oil and gas rights. To decide that question, the court had to determine the nature of the property rights conveyed by the instrument. The court in *Back* acknowledged that there was authority for the position that oil and gas can be conveyed or encumbered in the same manner as any other mineral estate. But *Back* explained that this view—the ownership-in-place theory—had been " 'severely criticized,' " and that in most states, oil and gas in place cannot be conveyed separately from the land. *Id.* at 87, quoting 24 American Jurisprudence, Section 4, at 520. The court then cited *Kelly* and *Nonamaker* as supporting this view that oil and gas is not subject to separate ownership from the realty until it is raised to the surface and produced from the well, at which point, it becomes the personal property of the well's owner. *Back* held that because the oil and gas could not be conveyed separately from the realty, the instrument was not a deed of conveyance—it did not convey a fee-simple property interest—but rather had to be recorded with the leases and licenses.

{¶ 76} *Harris* and *Back* shared a consistent view of the nature of the property right conveyed when a landowner leases oil and gas rights. It does not matter that *Harris* characterized the instrument as a lease and *Back* characterized it as a license. That is a false distinction that allowed *Buell* to justify disregarding the more recent holding in *Back*. Rather, the relevant analysis is whether a lease or license transfers ownership of oil and gas in place. And as *Kelly*, *Nonamaker*, and *Back* demonstrate, Ohio has adopted the incorporeal-hereditament theory. This means that the court's dictum in *Buell* that an oil and gas lease transfers fee-simple ownership of oil and gas in place, subject to reverter, *id.* at ¶ 61, is erroneous. Instead, in Ohio, the property owner retains fee-simple ownership of the oil and gas (and the rest of the realty) subject to an oil and gas lease and the lessee obtains an interest in the land to enter onto it, prospect for oil, drill wells, and produce oil and gas. This is an incorporeal hereditament known as a profit a prendre (a license coupled with an interest, not a bare license), which involves an interest in land that affects title. *See Boatman v. Lasley*, 23 Ohio St. 614, 618-619 (1873) (profit a prendre confers "the right to enter upon the lands of another, and remove gravel or other materials therefrom" and "so far partakes of the nature of an estate in the land itself, as to be treated as an inheritable and assignable interest"). Or as the court stated in *Harris*, the lessee obtains a limited estate, a "lease of the land" for the purpose of drilling for and producing oil. *Id.*, 57 Ohio St. at 129-130, 48 N.E. 502. It is a property right to enter on and work the land, not a fee-simple estate in the oil and gas.

{¶ 77} Ohio's adoption of the incorporeal-hereditament theory is legally and practically sound, because while it is in the ground, oil and gas can move across property lines and therefore cannot be bought and sold in fee simple. A property owner has the right to use its land "to secure and appropriate to its own use that which [comes] into its lands by percolation, or by flowing through unknown natural

underground channels." *Kelly*, 57 Ohio St. at 329, 49 N.E. 399. As the court in *Kelly* explained:

> Whatever gets into the well belongs to the owner of the well, no matter where it came from. In such cases the well and its contents belong to the owner or lessee of the land, and no one can tell to a certainty from whence the oil, gas, or water which enters the well came, and no legal right as to the same can be established or enforced by an adjoining landowner. The right to drill and produce oil on one's own land is absolute, and cannot be supervised or controlled by a court or an adjoining landowner.

*Id*. at 327-328.

{¶ 78} This is the "rule of capture," which permits a property owner to drill for and produce oil and gas from his or her own land even though doing so may drain oil and gas from underground pools that are below a neighbor's property. *Barnes v. Res. Energy Exploration*, 2016-Ohio-4805, 68 N.E.3d 133, ¶ 29 (7th Dist.), citing *Northwestern Ohio Natural Gas Co. v. Ullery,* 68 Ohio St. 259, 272, 67 N.E. 494 (1903). But there is no mechanism in law allowing a property owner to grant fee-simple ownership of a neighbor's real property (i.e., the oil and gas beneath it). Accordingly, an oil and gas lease gives the lessee the right to use the lessor's land to produce oil and gas from it, and the lessee acquires title to the oil and gas only when it is brought to the surface. Viewing an oil and gas lease as creating fee-simple ownership fails to recognize the fugacious nature of oil and gas as well as the law of capture's role in assigning title to oil and gas once they are produced.

{¶ 79} The Marketable Title Act, as amended in 1973, Am.S.B. No. 267, 135 Ohio Laws, Part I, 942-943, and the Dormant Mineral Act, 1989 Sub.S.B. No.

223, 142 Ohio Laws, Part I, 981, are irrelevant to determining the property interest created by an oil and gas lease. These acts were enacted to address the problem of severed mineral interests (e.g., by reservation in a deed) that went long unused but clouded the title to property and prevented landowners from making productive use of oil and gas under their property. *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 17-19 (lead opinion). Mineral rights had been "fractionalized through devise, descent, and conveyance," *id.* at ¶ 16, but under common law, they "were not subject to abandonment or termination for the failure to produce oil or gas or to extract other minerals," *id.* at ¶ 15. In contrast, oil and gas leases typically include conditions under which the lease will expire; for example, a condition might be that the lease will cease upon "the permanent abandonment, lack of production, or the exhaustion of oil and gas resources on the property." *Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 77-78. Neither the Marketable Title Act nor the Dormant Mineral Act speaks to our coherent body of caselaw holding that an oil and gas lease does not transfer fee-simple ownership of any part of the realty but rather grants an incorporeal hereditament permitting the lessee to enter onto the land to prospect for and produce the oil and gas under it.

{¶ 80} The majority's defense of its reliance on the dicta in *Buell* boils down to the ipse dixit that *Buell* controls because the majority says so. However, it is as true for this court as it is for the United States Supreme Court that "[t]he justifications for the case system and *stare decisis* must rest upon the Court's capacity, and responsibility, to acknowledge its missteps. It is our duty to face up to adverse, unintended consequences flowing from our own prior decisions." *Nixon v. Shrink Missouri Govt. PAC*, 528 U.S. 377, 406, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (Kennedy, J., dissenting). Rather than doubling down on *Buell*, which turned a century of caselaw on its head and which may yet have consequences this court did not intend, this court should simply admit its error and move forward,

acknowledging *Buell* as a cautionary tale against deciding issues that do not affect the outcome of the case.

### The Majority's Statute-of-Limitations Analysis Is Incorrect

{¶ 81} In addition to mischaracterizing the nature of the property interest created by an oil and gas lease, the majority incorrectly analyzes the statute-of-limitations issue in this case. It recognizes that a failure to produce is not a breach of the oil and gas lease but rather terminates the lease by operation of law and that upon termination, "the mineral estate revests in the lessor." Majority opinion at ¶ 24. Yet it apparently also presupposes that the lease remains in effect until an action is brought and the lease is declared terminated. But these two things cannot both be true. To expire by operation of law means no judicial action or record notice is required for the expiration of the lease to take effect—it is automatic. *See generally Buell* at ¶ 73-78. This court has said that "all rights to drill cease at the expiration of the time limited in the grant" and that such cessation of rights is not based on "rescission or forfeiture, but [on] expiration of the term of the grant." *Detlor v. Holland*, 57 Ohio St. 492, 506, 49 N.E. 690 (1898). That is, upon the expiration of an oil and gas lease, the landowner regains all of the sticks in the bundle of rights that go with property ownership, including the right to exclude others from the property or to lease the oil and gas rights to someone else.

{¶ 82} Accordingly, "although a court order may be necessary to adjudicate the rights of the parties when allegations are that a lease has terminated for failure to produce in paying quantities, a lease terminates not because of the entrance of a court order but for failure to produce in paying quantities under the lease's habendum clause." *Baytide Petroleum, Inc. v. Continental Resources, Inc.*, 2010 OK 6, 231 P.3d 1144, ¶ 23. And notably, not only is no court action required for an owner/lessor of property to reclaim the mineral rights after termination of a lease, but also the General Assembly has provided an extrajudicial method by

which the expiration of an oil and gas lease can be recorded to eliminate the cloud on the property's title without resorting to the courts, R.C. 5301.332.

{¶ 83} Because court action is not needed to terminate a lease that has expired on its own terms and by operation of law, a statute-of-limitations defense is not relevant to determining whether an oil and gas lease has terminated and the mineral rights have reverted to the landowner. A statute of limitations may come into play if the landowner subsequently seeks recovery for unjust enrichment or claims trespass or conversion of oil and gas after the lease's expiration, *see, e.g.*, R.C. 2305.09. And the statute of limitations for recovering title to or possession of real property, R.C. 2305.04, may be relevant when a lessee relies on the 21-year period to obtain an interest by adverse possession. *See State ex rel. A.A.A. Invests. v. Columbus*, 17 Ohio St.3d 151, 153, 478 N.E.2d 773 (1985); *see generally Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 199 (Tex.2003) (holdover tenant on oil and gas lease acquired interest by adverse possession as defined by the original lease). But absent adverse possession, the landowner has full ownership of his or her property after the expiration of a lease, and no statute of limitations can limit the right of a landowner to his or her own property, including the right to seek a declaration that the lease has terminated on its own terms.

## Conclusion

{¶ 84} "It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). And here, the majority's declaration that the 21-year statute of limitations applies to a complaint seeking to establish that an oil and gas lease has expired is not only advisory but also sows confusion in the law by suggesting that judicial action is necessary to establish something that occurred automatically as a matter of law. And in reaching

that determination, it relies on dicta in *Buell*, lending *Buell* unwarranted precedential value.

{¶ 85} In the end, this case turns on the question whether a movant has demonstrated entitlement to a summary judgment, and the hypothetical question of which statute of limitations should apply should be left for another day.

{¶ 86} Accordingly, I would dismiss this appeal as moot.

STEWART, J., concurs in the foregoing opinion.

––––––––––––––––

Fields, Dehmlow & Vessels, L.L.C., and Ethan Vessels; and Knowlton Bennett & Conaway and Bryan Conaway, for appellants.

Theisen Brock, L.P.A., Daniel P. Corcoran, and Kristopher O. Justice; and Donald D. Brown Law Offices and Donald D. Brown, for appellees.

Chad A. Endsley, Leah F. Curtis, and Amy Milam, urging reversal for amici curiae Ohio Farm Bureau Federation and Guernsey County Farm Bureau.

Vorys, Sater, Seymour & Pease, L.L.P., Timothy B. McGranor, and Gregory D. Russell, urging affirmance for amici curiae Ohio Oil and Gas Association and Southeastern Ohio Oil and Gas Association.

––––––––––––––––