[Cite as *Fikes v. Ohio Dept. of Rehab. & Corr.*, 2026-Ohio-1616.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

JOSHUA FIKES,

    PLAINTIFF-APPELLANT,

    v.

OHIO DEPARTMENT OF
REHABILITATION
AND CORRECTION, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 9-25-29

OPINION AND
JUDGMENT ENTRY

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 2025-CV-0328

Judgment Affirmed

Date of Decision: May 4, 2026

APPEARANCES:

    *Joshua Fikes*, Appellant

    *D. Chadd McKitrick* for Appellee Ohio Department of Rehabilitation
    and Correction

    *Elisabeth M. Leneghan* for Appellee JPay, LLC

**WALDICK, J.**

{¶1} Plaintiff-appellant, Joshua Fikes ("Fikes"), appeals the October 23, 2025 judgment of the Marion County Court of Common Pleas dismissing his Ohio Consumer Sales Practices Act complaint against the defendants-appellees, the Ohio Department of Rehabilitation and Correction ("ODRC") and JPay, LLC ("JPay"). On appeal, Fikes argues that the trial court erred in granting the Civ.R. 12(B)(6) motions to dismiss that were filed by ODRC and JPay. For the reasons set forth below, we affirm.

*Facts and Procedural History*

{¶2} Fikes is an inmate in the custody of ODRC. On July 18, 2025, Fikes filed a pro se complaint in the trial court against ODRC and JPay. In his complaint, Fikes alleged that he is a consumer as defined by R.C. 1345.01(D) and that ODRC and JPay are suppliers as defined by R.C. 1345.01(C). In the complaint, Fikes alleged that in 2014, he bought a JP4 Tablet ("JPay tablet" or "tablet") from ODRC at a JPay kiosk in Marion Correctional Institution ("MCI"). The complaint alleged that ODRC had contracted with JPay to provide services to ODRC and its inmates, including money transfers, multi-media tablets, video visitations, music downloads, and electronic mail.

{¶3} Fikes alleged that he bought his JPay tablet following a "sales pitch" by a JPay representative and an ODRC staffer made to Fikes in his housing unit at MCI. Fikes alleged he was told in that sales presentation that, if he purchased a

JPay tablet, he would be permitted to keep the tablet during his incarceration. The complaint alleged that, following the purchase of the tablet in 2014, Fikes also, over time, purchased 566 songs through the JPay kiosk in the prison, which were then downloaded to Fikes' tablet.

{¶4} The complaint alleged that on June 30, 2021, JPay and/or ODRC issued a memo indicating that JPay's contract with ODRC was being terminated, that ODRC had entered into an agreement with a new technology company, GTL, but that the JPay kiosk would remain available for inmates to use and the inmates would be allowed to keep their tablets with their music, emails, and photos.

{¶5} The complaint further alleged that on July 10, 2023, Fikes received a memo on a GTL tablet that had been assigned to him by ODRC. Per Fikes' complaint, that memo stated that the JPay tablets were being phased out and, beginning on October 1, 2023, the JPay tablets would be considered contraband, based on a variance to prior ODRC policy. The memo informed inmates in possession of a JPay tablet that they could receive credit for the tablet or send the tablet to an address of choice at ODRC's expense, which Fikes declined to do.

{¶6} The complaint alleged that Fikes subsequently filed a grievance against ODRC, arguing that he was entitled to keep the JPay tablet as originally indicated to him prior to purchasing it or he was entitled to be reimbursed for the cost of the JPay tablet and the 566 songs on the device. On July 31, 2023, MCI's Institutional Inspector found that the issue raised by Fikes in the grievance was outside the scope

of the grievance procedure, and that decision was affirmed on August 18, 2023 by the Chief Inspector of ODRC.

{¶7} The complaint alleged that Fikes then took steps to have his JPay tablet mailed out of the prison pursuant to the July 10, 2023 memo, prior to the October 1, 2023 deadline. On October 2, 2023, Fikes received a kite from the prison mailroom indicating that his JPay tablet would be mailed out as requested, with no postage cost to Fikes.

{¶8} Based on those factual allegations, Fikes' complaint asserted that the actions of ODRC and JPay violated the Consumer Sales Practices Act ("CSPA") and further asserted that Fikes was entitled to recover three times the amount of his actual economic damages, which were claimed to be $75.00 for the value of the JPay tablet and $1,126.34 for the 566 songs, plus $5,000.00 in non-economic damages pursuant to R.C. 1345.09(B).

{¶9} On September 22, 2025, JPay filed a motion pursuant to Civ.R. 12(B)(6), seeking to dismiss Fikes' complaint on the basis that it failed to state a claim upon which relief can be granted. Specifically, JPay argued that Fikes' complaint should be dismissed for five reasons: (1) Fikes' transaction with JPay is governed by integrated written terms of service and the parol evidence rule bars any reliance on alleged prior oral promises in contradiction of those terms; (2) Fikes' claims are barred by the two-year statute of limitations; (3) Fikes has not suffered any cognizable damages; (4) Fikes cannot establish that any act by JPay proximately

caused his alleged damages; and (5) Fikes' claims are barred by the CSPA's Safe Harbor Provision because the alleged acts were taken pursuant to lawful government action.

{¶10} On October 2, 2025, ODRC also filed a Civ.R. 12(B)(6) motion to dismiss Fikes' complaint. In that motion, ODRC argued that Fikes' claims against ODRC fail for two main reasons: (1) Fikes has not suffered actual economic damages and thus cannot bring a claim under the CSPA; and (2) Fikes' claims are barred by the applicable two-year statute of limitations.

{¶11} On October 20, 2025, Fikes filed a motion seeking leave to file an amended complaint, along with a response to JPay's motion to dismiss. By separate filing on October 20, 2025, Fikes filed a response to ODRC's motion to dismiss.

{¶12} On October 23, 2025, without leave of court having been granted, Fikes filed an amended complaint. The record reflects that Fikes submitted the amended complaint to the Clerk of Courts for the trial court on October 20, 2025; however, the Clerk's office did not file the amended complaint until October 23, 2025, apparently believing that the trial court needed to grant leave to Fikes before the amended complaint could be filed. However, as Fikes had submitted the amended complaint within the time available to amend a complaint as a matter of course without leave of court pursuant to Civ.R. 15, the trial court subsequently ruled that the amended complaint would be deemed to have been filed on October

20, 2025. Accordingly, the trial court considered Fikes' amended complaint when ruling on the motions to dismiss filed by JPay and ODRC.

{¶13} The first 46 paragraphs of Fikes' amended complaint were substantively identical to the corresponding paragraphs contained within his original complaint. However, in Paragraphs 47 through 54 of the amended complaint, Fikes added new allegations in order to assert the equitable tolling exception to the two-year statute of limitations that would otherwise be applicable. The additional paragraphs of the amended complaint alleged that Fikes had placed his original complaint in the MCI mailbox on July 2, 2025, and that the prison's mailroom staff then delivered the mailing to the cashier's office for processing, which occurred on July 3, 2025. The remaining paragraphs of the amended complaint alleged various possibilities as to why the prison's mailroom staff and/or the U.S. Postal Service did not promptly mail or deliver, respectively, the original complaint, and further suggested that it was possible the Clerk of Courts had received the complaint prior to July 10, 2025 but did not file the complaint upon receipt. Based on those allegations, Fikes asserted in the amended complaint that the fact the original complaint was filed after July 10, 2025 was through no fault or lack of diligence on Fikes' part and that extraordinary circumstances stood in his way and prevented timely filing of the original complaint.

{¶14} On October 23, 2025, the trial court filed a detailed judgment entry in which the trial court granted the motions to dismiss filed by both JPay and ODRC.

In that decision, the trial court found that, based on the allegations set forth in Fikes' complaint and amended complaint, dismissal of Fikes' legal action was appropriate for three reasons: (1) that the applicable two-year statute of limitations bars Fikes' claims; (2) that Fikes cannot establish actual economic damages as required to assert a claim under the CSPA; and (3) that the CSPA is not applicable as a matter of law to ODRC's decision to prohibit JPay tablets.

{¶15} On November 17, 2025, Fikes filed this appeal, in which he raises three assignments of error.

### First Assignment of Error

**The trial court erred in dismissing plaintiff-appellant's amended complaint with prejudice on the basis that it was barred by the two-year statute of limitations under R.C. 1345.10, and because actual economic damages cannot be proven.**

### Second Assignment of Error

**The trial court erred in not applying the equitable tolling doctrine as an exception to the two-year statue [*sic*] of limitations, or not permitting plaintiff-appellant's case to move forward to the discovery and summary judgment stages to gather evidence to support his claim of equitable tolling.**

### Third Assignment of Error

**The trial court erred in determining at the pleading stage that defendants-appellees' conduct is prohibited from being challenged under R.C. 1345.12.**

*Analysis of Assignments of Error*

**{¶16}** In his three assignments of error, Fikes asserts that the trial court erred, for various reasons, in dismissing his amended complaint pursuant to Civ.R. 12(B)(6).

Civ.R. 12(B) provides in relevant part:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

\* \* \*

(6) failure to state a claim upon which relief can be granted[.]

**{¶17}** A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). For a trial court to dismiss a complaint on that basis, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

**{¶18}** If there is a set of facts consistent with the plaintiff's complaint that would allow for recovery, the court must not grant the motion to dismiss. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). In considering a Civ.R. 12(B)(6) motion to dismiss, the court's review is limited to the four corners

of the complaint. *State ex rel. New Riegel Local School Dist. Bd. of Educ. v. Ohio School Facilities Comm.*, 2017-Ohio-875, ¶ 10 (3d Dist.).

**{¶19}** Appellate courts conduct a de novo review of trial court decisions granting a Civ.R. 12(B)(6) motion to dismiss. *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5. "On review, '[t]he allegations of the complaint must be taken as true, and those allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor.'" *Faber v. Seneca Cty. Sheriff's Dept.*, 2018-Ohio-786, ¶ 7 (3d Dist.), quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12.

**{¶20}** In the instant case, we first turn our attention to Fikes' arguments on appeal, raised in the first and second assignments of error, that the trial court erred in determining that Fikes' claims are barred by the applicable statute of limitations.

**{¶21}** At issue in this case is Ohio's Consumer Sales Practices Act, upon which Fikes based his legal claims against both ODRC and JPay.  The CSPA, set forth in R.C. 1345.01 *et seq.*, "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03." *Johnson v. Microsoft Corp.*, 2005 Ohio 4985, ¶ 24. "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Id*.

{¶22} A CSPA claim "may not be brought more than two years after the occurrence of the violation which is the subject of suit." R.C. 1345.10(C). Thus, it is well established that the statute of limitations for a CSPA claim begins to run on the date of the occurrence of the violation, which may or may not correspond to the date of the underlying transaction. See, *e.g.*, *Montoney v. Lincoln Logs, Ltd.*, 2007-Ohio-236, ¶ 26 (10th Dist.), citing *Luft v. Perry Cty. Lumber & Supply Co.*, 2003-Ohio-2305, ¶ 27 (10th Dist.). No discovery rule applies to CSPA claims; R.C. 1345.10(C) establishes an absolute two-year limitations period for such actions. *Id.*

{¶23} "Statutes of limitations serve several important purposes." *Browne v. Artex Oil Co.*, 2019-Ohio-4809, ¶ 32. "They ensure fairness to the defendant; encourage prompt prosecution of causes of action; suppress stale and fraudulent claims; and avoid inconveniences caused by delay, including the difficulties of proof in older cases." *Id.*

{¶24} "A motion to dismiss based upon a statute of limitations may be granted when the complaint shows conclusively on its face that the action is time-barred." *Doe v. Archdiocese of Cincinnati*, 2006-Ohio-2625, ¶ 11, citing *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, paragraph three of the syllabus (1982). In *Doe*, for instance, the Ohio Supreme Court held that the plaintiff's complaint conclusively established that his complaint was time-barred, as it demonstrated that at all times since the alleged tort, he knew the identity of the

perpetrator, knew that the perpetrator was a priest of the defendant archdiocese, and knew that a battery had occurred.

{¶25} In the instant case, the issue before us with regard to the statute of limitations is when Fikes' CSPA claim accrued and, therefore, when the two-year statute of limitations period began to run. Fikes filed his original complaint on July 18, 2025. Accordingly, for that complaint to be timely, his CSPA claim must have been premised on a violation that occurred after July 18, 2023.

{¶26} In Fikes' complaint and amended complaint, it was alleged that deceptive statements were made by JPay and ODRC representatives prior to Fikes purchasing his JPay tablet in 2014. Thus, based on that allegation of when the deceptive act occurred, the two-year statute of limitations clearly bars Fikes' claims. Although we do note that Fikes also alleged that the 2014 statements that he could keep a JPay tablet during his incarceration, if purchased, "was a deceptive statement in light of ODRC's July 10, 2023 memo setting forth the October 1, 2023 deadline to mail out his JP4 Tablet * * * ." (Amended Complaint, ¶ 40.). However, even if July 10, 2023 is considered as the date when the allegedly deceptive act occurred, the two-year statute of limitations still bars Fikes' claims. Accordingly, the trial court did not err in finding that Fikes' CSPA claim accrued more than two years before he filed his complaint.

{¶27} In the amended complaint, Fikes attempted to salvage his claim from dismissal on the basis of the statute of limitations by arguing that the equitable

tolling exception to the statute of limitations was applicable. In support of that claim, the amended complaint alleged that Fikes had placed his original complaint in the MCI mailbox on July 2, 2025, and that the prison's mailroom staff then delivered the mailing to the cashier's office for processing, which occurred on July 3, 2025. The remaining paragraphs of the amended complaint alleged various possibilities as to why the prison's mailroom staff and/or the U.S. Postal Service did not promptly mail or deliver, respectively, the original complaint, and further suggested that it was possible the Clerk of Courts had received the complaint prior to July 10, 2025 but did not file the complaint upon receipt. Based on those allegations, Fikes asserted in the amended complaint that the fact the original complaint was filed after July 10, 2025 was through no fault or lack of diligence on Fikes' part and that extraordinary circumstances stood in his way and prevented timely filing of the original complaint.

{¶28} The doctrine of equitable tolling extends statutory deadlines for parties who, through no fault of their own or lack of diligence, were prevented from complying with those deadlines. *Strother v. City of Columbus*, 2022-Ohio-4097, ¶ 29 (10th Dist.). "To be entitled to equitable tolling, a litigant must demonstrate (1) he has diligently pursued his rights, and (2) an extraordinary circumstance stood in his way and prevented him from timely filing." *Robol v. City of Columbus*, 2025-Ohio-973, ¶ 18, citing *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, ¶ 8 (10th Dist). Courts apply the doctrine of equitable tolling "sparingly and only in

-12-

exceptional circumstances." *Roach*, *supra*, at ¶ 8, citing *Moore v. Dep't of Rehab. & Corr.*, 2011-Ohio-1607, ¶ 21 (10th Dist.), and *Engler v. Adjutant Gen.*, 2018-Ohio-2273, ¶ 9 (10th Dist.) A determination of whether equitable tolling is appropriate is made on a case-by-case basis. *Strother*, *supra*, at ¶ 29, citing *Holland v. Florida*, 560 U.S. 631 (2010). Generally, application of the doctrine of equitable tolling is available only in compelling cases justifying a departure from established procedure. *Roach* at ¶ 8, citing *Sharp v. Ohio Civ. Rights Comm.*, 2005-Ohio-1119, ¶ 11 (7th Dist.).

{¶29} In this case, we conclude – as the trial court did – that the facts alleged in Fikes' amended complaint do not serve to support application of the equitable tolling doctrine. The allegations set forth by Fikes in support of his equitable tolling doctrine argument provide, on their face, nothing more than mere conjecture as to what may or may not have occurred with the handling of his original complaint after July 3, 2025. Moreover, as the trial court accurately noted, "every litigant who relies on the U.S. Postal Service for delivery of a filing runs the risk that the Postal Service will not deliver the parcel as quickly as the sender anticipated." (October 23, 2025 Judgment Entry of Dismissal, p. 14). "If a court allowed equitable tolling to apply as a result of mail delivery delays, statutes of limitations could quickly lose all meaning." (*Id.*).

{¶30} Finally, while not expressly asserted by Fikes, we note that the United States Supreme Court recognized the prison mailbox rule in *Houston v. Lack*, 487

-13-

U.S. 266 (1988). In *Houston*, the Supreme Court held that for purposes of a federal statute and appellate rule, a pro se prisoner's notice of appeal should be deemed filed when he delivers it to prison authorities for forwarding to the court. *Id.*, at 270. The Supreme Court reasoned that a prison mailbox rule was necessary in order to accommodate the unique circumstances faced by pro se prisoners in having to entrust the forwarding of their filings to prison authorities. *Id.*, at 271. However, the Supreme Court of Ohio rejected the prison mailbox rule in *State ex rel. Tyler v. Alexander*, 52 Ohio St.3d 84 (1990). Because the prison mailbox rule has not been adopted in Ohio, we find no merit to Fikes' claims that, in essence, rely on the reasoning behind that federal rule.

{¶31} For all of the foregoing reasons, we conclude that the trial court did not err in finding that Fikes' CSPA claims are time-barred by the statute of limitations. Accordingly, we overrule Fikes' first and second assignments of error to the extent he asserts therein that the trial court erred in dismissing the amended complaint on the basis of the statute of limitations. In light of our decision on the issue of the statute of limitations, the other arguments raised by Fikes in the second assignment of error and the arguments raised in the third assignment of error are overruled as moot.

*Conclusion*

**{¶32}** Having found no error prejudicial to the plaintiff-appellant, Joshua Fikes, in the particulars assigned and argued, the October 23, 2025 judgment of the Marion County Court of Common Pleas is affirmed.

***Judgment affirmed***

**ZIMMERMAN, P.J., and WILLAMOWSKI, J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

        Juergen A. Waldick, Judge

        William R. Zimmerman, Judge

        John R. Willamowski, Judge

DATED:
/jlm